## SAVANNAH LIGHTERAGE AND TRANSFER COMPANY *v.* MAYOR AND ALDERMEN OF SAVANNAH.

A conviction of a lighterage company of violating a penal municipal ordinance " to protect cotton and other merchandise while being loaded, unloaded, or transshipped," whereby it was prescribed that " all persons engaged in lightering or otherwise transporting " such merchandise must " cover the same, while on lighters or other crafts, with tarpaulins or other more permanent and substantial material," was not sustainable upon evidence showing that a given cargo of cotton, which had been transported upon a lighter belonging to the company from a wharf to a steamship, was left uncovered while being transferred from the lighter to the ship, when it further appeared by undisputed testimony that the contract of "lightering" was complete as soon as the lighter was placed alongside the ship, and that after this was done the accused had nothing more to do with either lighter or cargo, and when it was not shown that the company was under any statutory duty of keeping cargoes so covered while the same were being unloaded.

Argued October 17, — Decided November 26, 1900.

Certiorari.  Before Judge Falligant.  Chatham superior court. August 18, 1900.

*O'Connor, O'Byrne & Hartridge*, for plaintiff in error.
*Samuel B. Adams*, contra.

LUMPKIN, P. J.  The plaintiff in error was, by the police court of Savannah, adjudged guilty of violating a municipal ordinance, and brings here for review a judgment of the superior court of

Chatham county overruling a certiorari sued out to set aside the conviction. The ordinance in question is entitled "an ordinance to protect cotton and other merchandise while being loaded, unloaded or transhipped in the port of Savannah, and to diminish the risk of fire by requiring that the same be properly covered, and by prohibiting smoking." It is in the body of the ordinance prescribed that "all persons engaged in lightering or otherwise transporting cotton . . or other inflammable merchandise on the Savannah river, or other waters within the limits over which the . . Mayor and Aldermen of the City of Savannah have jurisdiction, be and they are hereby required to cover the same, while on lighters or other crafts, with tarpaulins or other more permanent and substantial material; and that each failure so to do" shall be punished, etc. The facts as developed by the evidence introduced in the police court were, in substance, as follows: The accused, while engaged in the business referred to by the ordinance, contracted with a railway company to transport from its wharf a specified number of bales of cotton to a steamship lying in the port of Savannah. The cotton was transported upon a lighter belonging to the accused, and kept covered until this lighter arrived "alongside said steamship," when the cotton was counted and receipts therefor were given by the mate of the ship. "In accordance with the contract, the lighter was allowed to remain alongside the steamship until its stevedore unloaded the cotton. During said time the lighter and the cotton were in the custody and under the control of the agents and servants of the steamship, and defendant had nothing to do with either." While the cotton was being transferred from the lighter to the ship, it was not kept covered. "It has been the practice for years, when a lighter loaded with cotton comes alongside a ship, to remove the tarpaulins [and] count the cotton, the defendant taking the mate's receipt therefor, at which time the cotton becomes the property of the ship and the defendant's liability ends. The cotton is supposed to be put immediately on board by the ship's stevedore, but is allowed to remain on lighter for the convenience of the ship for a reasonable time, averaging two days. It has never been the custom of this port to cover cotton with tarpaulins after it is delivered to ships, except as a protection against bad weather. When they are so used, they are furnished by the defendant but are paid for by the ships, being for their benefit and accommodation."

We are constrained to hold that the superior court erred in adjudging that upon this state of facts the conviction in the municipal court was lawful. The evidence demanded a finding that, when the lighter was placed alongside the steamship and the cotton was receipted for by the mate thereof, the service undertaken by ·the accused with respect to this particular lot of cotton had been fully performed and the business of "lightering" or "transporting" it was at an end. No other conclusion is consistent with the undisputed testimony that, after the lighter was placed by the side of the ship, both "the lighter and the cotton were in the custody and under the control of the agents and servants of the steamship, and defendant had nothing to do with either.". It can not, we think, be fairly said that the accused, at a time when it had no control of either craft or cargo, was then engaged in "lightering" or "transporting" the latter, or, indeed, in doing anything whatsoever therewith. It was earnestly insisted in the argument here that inasmuch as the title of the ordinance expressly referred to merchandise while being "unloaded," and the body of it required the same to be covered "while on lighters," it was, of necessity, applicable to every cargo until its actual removal from the lighter upon which it had been transported, and that those engaged in the lightering business were under a duty of keeping the merchandise covered while being unloaded, and could not escape the requirements of the ordinance by seeking to impose this duty upon another. The reply is, there is nothing in the evidence even tending to show that a contract for "lightering" goods could not be lawfully complete and perfect without embracing a stipulation for unloading them. Indeed, as already shown, the evidence in this case affirmatively establishes the contrary. It was not, therefore, shown that the alleged duty of unloading did, as matter of law, devolve upon the accused. If it had appeared that the accused was operating under a charter requiring it to perform any such duty, or that any statute so required, the question would be different. In that event, it could not shift the duty to another and thus escape the consequences of a failure to perform it.

Nor is there any merit in the further argument that, because the agents of the ship were not amenable to the ordinance, the accused must be adjudged guilty or nobody could be held responsible for its violation. If those agents were not, within the meaning of the ordinance, "engaged in lightering or otherwise transporting" mer-

chandise, they could not, of course, be held guilty; but this affords no reason for convicting the accused, if, as we think has been demonstrated, it was not itself, at the time the cotton was left uncovered, engaged, with respect thereto, in carrying on the business mentioned. And, lastly, that the accused may have been under a contract obligation to cover the cotton to protect it from bad weather can have no bearing upon the question at issue; for an agreement to do this, for a designated compensation, would evidently relate to something entirely outside of and distinct from the contract to lighter or transport. The certiorari ought to have been sustained.

*Judgment reversed. All the Justices concurring.*